IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JULIA HYON JOO SHIN<br><br>Plaintiff,<br><br>v.<br><br>MIN HUI KIM aka MINHI KIM aka MINHUI KIM<br><br>Defendant. | CASE NO.  24-cv-4293<br><br><br>**COMPLAINT**<br><br>**JURY DEMAND** |

Plaintiff Julia Shin ("Plaintiff" or "Ms. Shin"), by and through undersigned counsel, files this complaint against defendant Min Hui Kim aka Minhi Kim aka Minhui Kim ("Ms. Kim" or "Defendant"), alleging as follows:

1. This is a complaint for breach of fiduciary duty, or alternatively conversion, embezzlement or unjust enrichment, stemming from Defendant's intentional and unjust appropriation of nearly $1.5 million of Plaintiff's property.  The funds are Plaintiff's rightful proceeds from the sale of her condominium unit in Seoul, South Korea.

2. In or around 2005, Plaintiff and her former husband Thomas Jong Won Shin ("Mr. Shin"), both U.S. citizens, purchased a condominium unit in Seoul, South Korea.  Due to restrictions in Korea for foreigners owning real property, the Shins asked Ms. Shin's cousin Min Hui Kim, Defendant herein and a citizen of South Korea, to serve as nominal owner of the condominium.  Defendant agreed, and Mr. Shin paid the full purchase price of the condo.

3. Years later the Shins divorced, agreeing to binding arbitration proceedings to govern the division of marital property, with supervision of the Superior Court of the State of Washington, County of King.  While the Shins have fiercely disputed many aspects of the

1

division of marital property, both Mr. and Ms. Shin agree that the Seoul condominium, post-divorce, belongs solely to Ms. Shin.

4. In late 2023, the condominium was sold to a third party, netting nearly $1.5 million after payment of capital gains taxes in South Korea, and deducting other expenses. Defendant retains those net proceeds to this day.

5. Ms. Shin has requested the transfer of those proceeds to her account in the United States, but Defendant has refused to turn over Plaintiff's property. Plaintiff now brings this action to recover the net proceeds from the sale of her condominium.

## I.   THE PARTIES

6. Plaintiff is a United States citizen residing in the State of Washington.

7. Defendant is a South Korean citizen, with permanent residency in the United States, residing in New York City in the State of New York.

## II. JURISDICTION AND VENUE

8. This Court has original subject matter jurisdiction under 18 U.S.C. § 1332 in that this is a civil action between a citizen of a state and a citizen of a foreign state and the amount in controversy exceeds $75,000.00, exclusive of interest and costs. Plaintiff is a U.S. national and citizen of the State of Washington, while Defendant is a South Korean national residing in New York State. Pursuant to 28 U.S.C. § 1332(a)(1) or (2), there exists complete diversity of citizenship of the parties. There are no other parties to the case whose citizenship is at issue under 28 U.S.C. § 1332.

9. This Court has personal jurisdiction over the Defendant because she resides in the State of New York.

10. This Court is a proper venue pursuant to 28 U.S.C. § 1391(b)(1), because Defendant resides in this judicial district, specifically in New York City.

## III. STATEMENT OF FACTS

11. In 2005, Mr. and Ms. Shin were married and living in Seoul, South Korea. The couple wished to purchase an apartment.

12. Due to local restrictions that barred non-citizens from acquiring and owning real property, the Shins asked Defendant, Ms. Shin's cousin, to serve as the nominal owner in their stead.

13. Plaintiff trusted Defendant to serve in the proposed trust arrangement due to their relationship as cousins, and mutual trust from an unbreakable bond between their fathers.

14. Defendant agreed to the arrangement, and on or around March 31, 2005, the Shins acquired an apartment located at Hannam-dong Hyperion 2 #505, 550 Hannam-dong, Yongsan-gu, Seoul, South Korea, (the "Condo"), with the deed being held in Defendant's name.

15. In the intervening years, Mr. Shin has at times resided in the Condo and at other times rented the Condo to third parties, at all times paying for the Condo's expenses and taxes, or reimbursing those expenses to Defendant where appropriate.

16. On or around April 16, 2021, the Shins divorced, agreeing to private, binding arbitration proceedings before a JAMs arbitrator, retired Judge Richard F. McDermott (the "JAMS Arbitrator"), with the arbitration proceedings occurring under the supervision of the Superior Court of the State of Washington, County of King (the "Divorce Proceedings" in the "Washington Court").

17. In a May 22, 2023 *First Interim Order*, the Condo was awarded 100% to Ms. Shin by the JAMs Arbitrator.

18. On October 24, 2023, the JAMs Arbitrator issued his *Second Order for Property and Liability Division* (the "Second Order"), ruling on a number of disputed matters involving the

...

division of marital property. The Condo[1] was awarded exclusively to Ms. Shin, just as it had been in all prior rulings.

19. On March 25, 2024, an *Interim Final Order* awarded 100% of the Condo sale proceeds to Ms. Shin.

20. A May 20, 2024 *Final Order Re: Hyperion Condo Proceeds* (the "Final Order") awarded "100% of the Hyperion condo proceeds to Ms. Shin and [was] a Final Order as to this asset." A true copy of the Final Order is filed herewith as **Exhibit A**.

21. While the final division of marital property is still being litigated, the parties have not disagreed about the allocation of the Condo to Ms. Shin.

22. In a submission to the Washington Court on November 16, 2023, Mr. Shin states "I do not contest the award of the [Condo] to [Ms. Shin]."[2]

23. During the course of the Divorce Proceedings, the Shins also agreed that the Condo should be sold. They worked with Defendant to guide a sale process that ultimately resulted in the sale of the Condo to a third party in or around September 2023 for 2.7 billion Korean won ("KRW"), roughly US$ 2.02 million. (the "Gross Sale Proceeds").

24. According to closing documents, on the sale of the Condo the Gross Sale Proceeds were transferred by the buyer to Defendant's account at Shinhan Bank in South Korea.

25. Following receipt of the Gross Sale Proceeds, the broker informed Defendant and Plaintiff that she was required to pay KRW 571,053,020 ($429,363) and KRW 57,105,302 ($42,936) in reference to Korean federal and local capital gains taxes, respectively, as well as KRW 30,597,560 ($23,005) in other miscellaneous costs (the "Sale Expenses").

---

[1] By now the Condo had been sold to a third party, and the award to Ms. Shin was for 100% of the sales proceeds.
[2] In that same submission, Mr. Shin "asks that we hold any payment out of the account that holds the Hyperion sales proceeds" until "we have reached 'completeness,' and all assets addressed."

26. Ms. Kim has subsequently alleged in a sworn declaration that, since 2007, she paid a total of KRW 36,912,055 (US$27,753.42) (the "Unreimbursed Korean Taxes") relating to the Condo for which she was never reimbursed. See the March 15, 2023 Declaration of Minhui Kim (the "Kim Declaration", filed herewith as **Exhibit B**.

27. In the Kim Declaration, Defendant also alleged that she is owed $18,661.67 for taxes that she paid in the United States between 2020 and 2021 relating to income from the Condo, (the "Unreimbursed U.S. Taxes") for which she claims she was never reimbursed.

28. Net the Sale Expenses, and net the Unreimbursed Korean and U.S. Taxes[3], by the end of 2023 Defendant was holding net sale proceeds of KRW 2,004,332,063 (US$1,488,354.92) in her Shinhan Bank account (the "Net Sale Proceeds").

29. A detailed accounting of the Net Sale Proceeds is as follows:

| DATE | KRW | USD/KRW 1,330 on 3/6/2024 | DESCRIPTION |
|---|---|---|---|
| 11/2/2023 | 2,700,000,000 | $2,030,075.19 | Sale Price |
| | (571,053,020) | ($429,363.17) | Capital Gains Tax |
| | (57,105,302) | ($42,936.32) | Local Capital Gains Tax |
| | (550,000) | ($413.53) | Legal Scrivener Fee |
| | (550,000) | ($413.53) | Accountant Fee |
| | (98,640) | ($74.17) | Gas Bill |
| | (2,668,920) | ($2,006.71) | Past Due Hyperion Fees |
| | (26,730,000) | ($20,097.74) | Broker Fee, Yvonne Kim |
| | (36,912,055) | ($27,753.42) | Unreimbursed Korean Taxes |
| | (24,820,021) | ($18,661.67) | Unreimbursed U.S. Taxes |
| **BALANCE** | **2,004,332,063** | **$1,488,354.92** | **Net Sale Proceeds** |

30. Following the sale of the Condo, Plaintiff has made multiple requests for Defendant to transfer the Net Sale Proceeds to Plaintiff's account in the United States.[4]

---

[3] Defendant never proved or explained the nature or payment of the Unreimbursed Korean and U.S. Taxes. Nonetheless, Plaintiff has deducted these amounts from the amount sought in the instant complaint.
[4] The latest demands prior to the filing of the instant complaint were for $1,534,770, not accounting for the deduction of the alleged Unreimbursed Korean and U.S. Taxes.

31. Defendant admits that she was only the nominal owner of the Condo, but rather than transfer the funds, Defendant has responded to Plaintiff's requests with a series of dubious excuses for her continued retention of the funds.

32. Nearly nine months after the sale of the Condo, Defendant has not transferred any of the Net Sale Proceeds to Plaintiff, nor has she provided any alternative accounting of the funds due, giving rise to the instant action.

33. The Final Order from the JAMs Arbitrator determined that "Ms. Shin is immediately entitled to 100% of the Hyperion proceeds, less the expenses and debts identified by Ms. Kim in her 3/15/2023 declaration [the Unreimbursed Korean and U.S. Taxes]." Final Order at 4.

34. Yet, despite a written demand for an accounting of the Condo sale proceeds having been served on Ms. Kim's counsel on or around March 12, 2024, and despite having been promised an accounting by April 19, 2024, Ms. Kim has failed to produce any accounting whatsoever.

35. In that demand, Plaintiff also demanded payment of the Condo sale proceeds, a payment which Ms. Kim never made.

36. Due to Defendant's willful retention of the funds, Plaintiff has been damaged in an amount not less than the Net Sale Proceeds.

## IV. CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### BREACH OF FIDUCIARY DUTY

37. Plaintiff incorporates herein all the preceding allegations as though fully set forth herein.

38. Beginning in 2005, Defendant agreed to serve as the nominal owner of the Condo, holding that property for the benefit of Plaintiff and her former husband Mr. Shin.

6

39. In her role as nominal owner, Defendant owed a fiduciary duty to Plaintiff and Mr. Shin with respect to the Condo.

40. Upon the Shins' divorce and the award of the Condo exclusively to Ms. Shin, Defendant owed the fiduciary duty solely to Plaintiff.

41. Defendant breached her fiduciary duty to Plaintiff when she refused to transfer the Net Sale Proceeds to Plaintiff following the sale of the Condo.

42. Because of Defendant's breach, Plaintiff has suffered damages in the amount of the Net Sale Proceeds.

## SECOND CAUSE OF ACTION
## CONVERSION

43. Plaintiff incorporates herein all the preceding allegations as though fully set forth herein.

44. Plaintiff pleads this second cause of action in the alternative.

45. Beginning in 2005, Defendant agreed to serve as the nominal owner of the Condo, holding that property for the benefit of Plaintiff and her former husband Mr. Shin.

46. When it was purchased, the Condo was the actual property of Plaintiff and Mr. Shin, who were its beneficial owners.

47. Upon the Shins' divorce and the award of the Condo exclusively to Ms. Shin, the Condo became property of the Plaintiff, who had the sole right to possession of that property.

48. The Net Sale Proceeds were similarly the property of the Plaintiff, who had the sole right to those funds.

49. When Defendant intentionally refused to transfer the Net Sale Proceeds to Plaintiff following the sale of the Condo, Defendant improperly converted Plaintiff's property for her own benefit.

7

Because of Defendant's conversion, Plaintiff has suffered damages in the amount of the Net Sale Proceeds.

### THIRD CAUSE OF ACTION
### EMBEZZLEMENT

50. Plaintiff incorporates herein all the preceding allegations as though fully set forth herein.

51. Plaintiff pleads this third cause of action in the alternative.

52. Beginning in 2005, Defendant agreed to serve as the nominal owner of the Condo, holding that property for the benefit of Plaintiff and her former husband Mr. Shin.

53. When it was purchased, the Condo was the actual property of Plaintiff and Mr. Shin, who were its beneficial owners.

54. Upon the Shins' divorce and the award of the Condo exclusively to Ms. Shin, the Condo became property of the Plaintiff, who had the sole right to possession of that property.

55. The Net Sale Proceeds were similarly the property of the Plaintiff, who had the sole right to those funds, although they were lawfully under control of Defendant in her Korean bank account.

56. When Defendant intentionally refused to transfer the Net Sale Proceeds to Plaintiff following the sale of the Condo, Defendant improperly embezzled Plaintiff's property for her own use and benefit.

57. Defendant knew that the Net Sale Proceeds were property of the Plaintiff, but intentionally withheld those funds, intending to defraud Plaintiff of her property.

58. Because of Defendant's embezzlement, Plaintiff has suffered damages in the amount of the Net Sale Proceeds.

## FOURTH CAUSE OF ACTION
## UNJUST ENRICHMENT

59. Plaintiff incorporates herein all the preceding allegations as though fully set forth herein.

60. Plaintiff pleads this fourth cause of action in the alternative.

61. Defendant received the Net Sale Proceeds, property of the Plaintiff, into Defendant's bank account in Korea, following the sale of the Condo.

62. Upon refusing to turn over the funds, Defendant enriched herself in an amount equal to the Net Sale Proceeds.

63. As a result of Defendant's unjust enrichment, Plaintiff suffered damages in the amount of the Net Sale Proceeds.

64. Under New York law, and similar unjust enrichment laws in other jurisdictions, Plaintiff is entitled to recover an amount not less than the Net Sale Proceeds from Defendant.

## FIFTH CAUSE OF ACTION
## EQUITABLE ACCOUNTING

65. Plaintiff incorporates herein all the preceding allegations as though fully set forth herein.

66. Plaintiff pleads this fifth cause of action in the alternative.

67. Plaintiff and her ex-husband Mr. Shin, on the one hand, and Defendant, on the other, maintained a relationship of a mutual and confidential nature.

68. Plaintiff and Mr. Shin entrusted the Condo, and later the Net Sale Proceeds, to Defendant.

69. Plaintiff has demanded an accounting of the Condo sale proceeds from Defendant, who has refused to provide it.

70. Under New York law, and similar common law in other jurisdictions, Plaintiff is entitled to an equitable accounting of the proceeds of the sale of the Condo, showing the true amount owed to Plaintiff.

## V. JURY DEMAND

71. Plaintiff demands a jury trial on all issues that may be tried before a jury in this matter.

## VI. PRAYER

WHEREFORE, Plaintiff prays for judgment against Defendant for an award of damages in an amount to be proven at trial but not less than the Net Sale Proceeds, or KRW 2,004,332,063 (US$1,488,354.92), as well as prejudgment interest and costs, reasonable attorney's fees, and for such other and further relief as the Court may deem just, equitable or proper, including punitive damages for Defendant's willful conversion or embezzlement, and an equitable accounting of Plaintiff's property under Defendant's control.

DATED this 5th day of June 2024

Respectfully submitted,

SARACHEK LAW FIRM

/s/ Zachary Mazur
Zachary E. Mazur, Esq.
670 White Plains Road, Suite PH
Scarsdale, New York 10583
zachary@saracheklawfirm.com (646) 519-4396